Oral arguments not to exceed 15 minutes per side, Wendy Overmeyer for the appellant. May it please the court, I'm Wendy Overmeyer for the federal public defender for the appellant Justin Krueger, and I've reserved five minutes for rebuttal. At sentencing, Justin Krueger had already served nearly 12 months of incarceration, and his range was 12 to 18 months under the guidelines, and he asked for time served within guideline sentence. But instead, the district court imposed a sentence triple the low end, and in doing so committed three errors requiring reversal here. The first is a conceded tapia error in a sua sponte four-level upward variance, and then there were also two improper upward departures, one level each. And the court also failed to consider relevant factors presented by Mr. Krueger. And these sentencing errors followed a faulty plea hearing, which is fully briefed, we'll rely on our briefs about that plea hearing, that also depends on a case currently pending with the Supreme Court, Alanis, about this particular statute. And together, these errors require the court to vacate Mr. Krueger's plea and sentence in this case. First, I'll address the tapia error that the government concedes the district court agrees with you that it's a violation, but argues that it's harmless error. And if you've got a remand, a reversal and a remand, what makes you think that the district court, if the remand is based on tapia only, that there would be a different sentence? The remedy for tapia error is to remand, and we argue that there is no harmless error analysis in the tapia error. And it's also the government's burden to show that the error didn't result in a longer sentence. It is not the defense's burden to show the opposite. And this court has found that this court cannot presume the sentence would be the same without consideration of that improper factor. And the rehabilitation was the principal factor here that the district court relied on. The district court extended his sentence to triple the range so he could get into the 500-hour RDAP program, the residential drug treatment program, and also for mental health treatment, which is somewhat ironic because the RDAP program is not available for defendants who have less than a 50-month sentence. The wait list is so long. If you don't have a sentence of 50 months, you just don't get into that program. And secondly, mental health treatment is notoriously lacking in BOP facilities. And the better option... One of the problems here is that the rehabilitation factor that the judge here below used as one of his factors seems so reasonable on the surface. You think it's clear that there is no alternative but that tapia prohibits the consideration of anything like that by a sentencing judge, no matter how reasonable it may be for the ordinary person to think, well, it might very well make a big difference in this guy's life if he gets some rehabilitation along these lines. But that is just prohibited by the sentencing guidelines? It's prohibited by the Supreme Court in tapia. It's specifically prohibited in considering the length of a sentence. Once a district court decides imprisonment is appropriate, it can consider rehabilitation purposes to decide whether probation or imprisonment is proper. But once it decides imprisonment is proper, then rehabilitation falls out of the analysis and can't factor into the length of the sentence of incarceration. And that was a ruling by another panel in this court in Reynolds in 2013. And also... The district judge here did give some reasons, though, for the 36-month sentence. He didn't say it was only the rehabilitation. He said there was a need to protect the public and to reflect the seriousness of the offense. And so let's just say the harmless error standard applies. Why wouldn't it be harmless error here for the judge to have mentioned as another reason and quotes the need for rehabilitation when he gave two fairly strong reasons, certainly based upon this record? Because the court here... The primary reason was rehabilitation. And the other reasons the court gave, which were protection and deterrence, the court didn't address the protection order that's in place, protecting the victims until 2019 from any contact by Mr. Kruger. So do we know with certainty that the primary reason was rehabilitation? Because... Okay, I'm sorry, go ahead. It's our opinion. That's clear from the record. When you read the district court's comments at sentencing, that that is its primary reason for the four-level upward variance in this case. Well, I did read those comments, and I guess I need to have you explain to me why you draw from that that this was what he was aiming at primarily. He focused primarily here on rehabilitation, and specifically mental health treatment, and that he needed significant mental health treatment to become, he didn't use the words, but to become a better citizen, to become a better individual. And that's precisely what Tapia forbids. And the court did impose cognitive behavioral treatment as part of supervision. And we would suggest that inpatient or outpatient treatment on supervision provides better mental health treatment than incarceration in a BOP facility. And this court has also said that even where the sentence is based on other proper factors, the consideration of an improper factor warrants reversal, because this court cannot presume that the sentence would be the same if the court did not consider that improper factor. And also the Supreme Court has said the same, just last year in Henderson, that we cited in our, I guess it's two years ago now, in 2013, we cited in our brief that said anytime there is a longer sentence based on an improper factor, it's not harmless because it affects the integrity and reputation of the proceedings to allow a longer sentence based on an improper factor. And that is why we ask this court to remand on the Tapia error. This is a per se rule in the Supreme Court. Tapia is a per se rule. If you mention and use that factor at all, it is an automatic reversal, no harmless analysis is possible. I don't know that. Rehabilitation, there are various Tapia cases in front of this court. A lot have been reversed, just simply it was based on rehabilitation, and so we're going to vacate and send it back, even where other errors were committed. There are some cases where there was a slight mention of rehabilitation, but it wasn't the actual basis for the sentence that this court has found, such as I believe the government supplemented a 28-J letter where the court found there was no Tapia error in that case. Here it's different because the government concedes there was a Tapia error. You can get around Tapia as I understand it if the court just says, now I'm not doing this on account of rehabilitation, I'm giving you this sentence for these other 35-53 factor reasons, but as a part of the sentence, I'm going to ask that the Bureau of Prisons do certain things which are in connection with rehabilitation. If it does it that way, that's okay. It would depend on the particular record in the case. I don't know that the court can lengthen a sentence just to get someone into a certain program. That's all up to BOP policy and wait times. Here in looking at the record, it's clear that the court did base it on rehabilitation. I don't know that every mention of rehabilitation would be a Tapia error, but certainly here there is a Tapia error in this case. A court might impose a sentence for many reasons, it doesn't state on the record, but what we're looking at is the record, and the record here is clear that it was a Tapia error. I have some time left, I'm just going to briefly talk about the upward departures here under very rare departure provisions, extreme conduct and extreme psychological injury. We've addressed in our briefs why this case does not meet the standards of those particular guideline departures, particularly where the court specifically found there was no intent to carry out the threats in this case, and there were no physical acts and there were no physical injuries in this case to warrant those two departures. Unless the court has further questions. Apparently not. Thank you, you will have your rebuttal time. Thank you. Good morning, may it please the court, my name is Paul Flannery, I'm an assistant United States Attorney, I represent the United States in this case. I'd like to jump right into the Tapia error in this case and address some of the comments made by counsel. First as to the standard of error, it's certainly subject to a harmless error standard. In the Sixth Circuit, the Sixth Circuit has found that Tapia errors are matters of substantive reasonableness and therefore where there's a conceded Tapia error as there is in this case, it's subject to harmless error review. It does not warrant an automatic reversal, it's subject to whether or not there is a reasonable certainty that the sentence would be the same even if it were to be remanded and it's the government's position in this case that that is absolutely the case. The government submitted in its Rule 28J letter the case of the United States v. Krull and while in Krull the Sixth Circuit panel there determined that there was not a Tapia error, the government believes that this case is most comparable to Krull. We conceded a Tapia error but it's the government's position that there really should be considered a sliding scale, so to speak, of Tapia errors. This case went just over the line. The government's position would be that were it not for the District Court's statement in pronouncing sentencing that one of the other reasons that I am imposing this 36-month sentence is so that the defendant can take advantage of the drug treatment program in probably on all fours with Krull and would not be a Tapia error. But because of that statement it's clear that one of the District Court's reasons for imposing the sentence that it did was because of rehabilitative needs and that amounts to a Tapia error. But nevertheless, like in Krull, like in United States v. Green, I believe Tapia to say that any time the court mentions rehabilitation in any way, shape, form, or fashion as a part of its reasoning for the sentence that that's a Tapia error. No, absolutely not, Your Honor. I do not agree with that. Mentioning rehabilitative needs is perfectly permissive in not only pursuant to the Tapia case but in the other cases including Sixth Circuit cases like Krull that have analyzed Tapia since. A court can impose a particular sentence and then can comment on this will provide additional opportunities for the defendant because although I'm imposing a sentence for reason A, reason B, which are entirely permissible, I am able to comment in sentencing the defendant that this is going to also allow you opportunities to take advantage of programs inside Bureau of Prisons. The difference in this case, the government believes, really was that one sentence by the District Court where it stated this is another reason why I am imposing the sentence and it causally linked the sentence to the rehabilitative needs. But nevertheless, there are two other very permissible reasons that the District Court had. The government would entirely disagree with Defense Counsel's assertion that by reading the record, the primary purpose of sentencing in this case would be rehabilitation. That is not correct and the record does not support that in any way. In fact, it's exactly the opposite. A 129-page sentencing transcript, three instances where the District Court mentioned rehabilitation. One of them amounted to a topiary error because it linked the sentence to the rehabilitative needs. But it's clear that the overwhelming majority of the sentencing went to the egregious offense conduct of the defendant, the need to protect the public, including his adoptive parents, and the need to reflect the seriousness of the offense. And when put in context, it was clear that the primary purposes for this sentence were those reasons, the need to protect the adoptive parents and the need to reflect the seriousness of the offense. Those were the reasons, the primary reasons. Whether there were nine permissible reasons and at the end of that, a tenth reason which was topia, the effect would be the same. It's nearly certain that the exact same sentence would be imposed on remand because of the offense conduct here and because of the overwhelming context that the District Court put that offense conduct inside the sentencing transcript. It really, if anything else, was although the government cannot make the argument in good faith that the District Court only was discussing opportunities for rehabilitation, what the District Court did here was very, very close to that. And that's why this case is most similar to United States v. Krull or perhaps United States v. Tolbert where the District Court, unlike in many of the cases that defense counsel cited in their brief or discussed, this was not a case where the District Court started out by discussing rehabilitation, talked specifically about how this program requires a certain length of sentence and therefore I'm going to make sure I lengthen the sentence so that you can take advantage of that. It really was close to an afterthought, although unfortunately the District Court did state that it was a reason and therefore it went just over the line and it caused a tapia error. But nevertheless, even on harmless review, the District Court would impose the very same sentence on remand. You know, you started your comments with the statement that we would need to know, I think you said, with certainty. And that seems to be the phrase that the case precedent used in terms of this determination that the sentence would not have been more severe because of this error. And so, quite frankly, I can't tell if it's just before the line or just over the line because it's such a tough call. I mean, the District Judge did give some other reasons. He varied the sentence, I don't know, 14 to 18 or whatever level it was and he cites these couple of other reasons, protecting the public and the seriousness of the offense, but he also cites the rehabilitation prong and it's just hard to know with certainty whether it would have been 36 months or 32 months or 28 months or something different. Just seems to be a tough call. I just wonder if it's that close, maybe the wiser course of action is to remand on this one issue. I know you don't support remand here, obviously. Where I agree with Your Honor is that the line between, as Judge Griffin stated in the concurring opinion in United States v. Krull, the line between Tapia error and Tapia compliant sentencing transcript can be very, very fine. And in this case, it was very, very fine. The government has conceded, though, that the District Court went just over that line. Nevertheless, the government's position as to the question of harmlessness thinks it would be, it is actually quite clear, is that when the sentence transcript is put in context and that transcript is compared to other cases that have found remand for Tapia reasons, this case is completely different. This case does not have an instance where the District Court is talking about a specific program that requires a specific amount of time or that the defendant needs a certain amount of time in order to take advantage of these particular programs. Or in the case of United States v. Guessing would be a good example, which defense counsel provided in a 28-J letter. In that instance, defense counsel objected at sentencing and said, Judge, that's a Tapia error, which you just did. You're talking about rehabilitation and you can't do that. And the District Court said, well, we need to have rehabilitation here. And really, this isn't so much about deterring or reflecting the nature of the offense. What this is really about is rehabilitation. The District Court specifically disavowed those other reasons. We don't have that here. We have quite the opposite. We have a very well-documented record reflecting an extremely seriousness offense, where the District Court took pains to talk about how because of the defendant's mental health problems, he couldn't be deterred. That was one of the District Court's reasoning is that he just doesn't get it. He needs to be incapacitated because that's the only way to protect his adoptive parents. And that's why on remand the exact same sentence would be imposed. So I'd like to address briefly the underlying sentence and specifically the departures that were imposed. First, as to the 5K2.3 departure for extreme psychological injury, the appellant asserts that without a medically confirmed diagnosis, that this is simply not a departure that is warranted. And that argument was specifically, I wouldn't say specifically rejected, but that argument was rejected by the case of United States v. Bowker, Sixth Circuit case. Very similar facts in a lot of ways to this, at least as to what the offense conduct caused the victim to do. Rearrange their life. Purchase a handgun. Use a security escort. Totally dismantle their life as to what they were doing at that time. Bowker had no medically confirmed diagnosis of psychological trauma. What the Sixth Circuit found was that the changes in the victim's behavior are what raised the clear inference that there was extreme psychological injury, just as the District Court did in this case. Specifically mentioning that the District Court noted it had other cases of threats or stalking type cases where victims were not caused to rearrange their lives. Whereas in this case, they were, giving rise to the inference that that departure is warranted. As to the notion that this conduct was simply not serious enough, that's also been rejected by other cases, which we cite in our brief. United States v. Bohannon, the Seventh Circuit case, United States v. Morrison, the Second Circuit case. Both of those instances involve very similar conduct. Threats of rape, threats of mutilation, false accusations of child molestation. All those were found in the Bohannon case. Bohannon found that the Bohannon case noted that the departures there for 5K2.3 and 5K2.8, exactly as in this case, were so obvious that it almost didn't even warrant discussion. It was so self-evident from the record. Another example that's very similar to this case. And finally, as to the 5K2.8 departure, the appellant asserts that without a showing of physical harm, that that departure is not warranted. Again, rejected by United States v. Massey, Sixth Circuit case. That argument was specifically rejected. And nevertheless noted that the types of harm that were found here, where a victim rearranges their lives and their life is dismantled due to the nature of the threats, that that is sufficient harm, nevertheless, to warrant the departure. There have been other cases, including the Davis case in the Sixth Circuit, which was a telemarketing fraud case, where 5K2.8 was upheld for cruelly badgering telemarketer customers. And when some of the transcript that's reflected in that case is compared to the extraordinarily brutal threats of the defendant in this case, it's not even comparable. Those departures were amply justified and they should be affirmed by this court. Finally, as to the substantive reasonableness of the sentence, the appellant is really asking this court to rebalance the 3553A factors, which is really not cognizable on appeal. The district court considered at length the mitigating factors of the defendant. The district court considered at length and mentioned the defendant's tumultuous childhood, his bad start. He commented about how well-reasoned and thought out the defendant's sentencing memorandum was, which talked about all of the mitigation conduct and how the district court considered that. He considered the defendant's proffered reason for committing the conduct in the first place, his separation from his brother. And despite considering all that, the district court then clearly reflected on the very serious offense conduct and the nature and circumstances of the offense. And despite all of that mitigation, it came to the conclusion that the appropriate sentence was to apply two one-level departures, which were justified, and then an upward variance in order to incapacitate the defendant, to protect the adoptive parents, and to reflect the extraordinary seriousness of the offense. And this court should uphold the defendant's conviction and the defendant's sentence. I would like, since I do appear to have some time left, to briefly address the defendant's guilty plea. But the defendant raises two Rule 11 arguments, both of which are the government considered to be meriless. The first is that the district court did not adequately explain the elements of the offense under Rule 11b1g. What the district court was required to do, and what it did do, was to substantially comply with Rule 11. It made clear that the defendant understood the statutes against which he was charged, that he had discussed the elements of the offense with counsel, that counsel was professionally satisfied that the defendant understood those elements. He then had the assistant United States attorney read into the record the facts supporting the guilty plea, which amounted to a verbatim reading of the indictment, then asked the facts, and do you agree that those facts, when applied to the elements of the offense, would support a conviction against you? And the defendant responded yes. He asked if the defendant had any questions regarding the elements of the offense, and the defendant responded he did not. And of course, this is a case that gives rise to a presumption that the defendant understood the nature of the charges, because the defendant was provided with a copy of the indictment, the indictment was read to the defendant, he was provided an opportunity to ask questions, and he stated he had no questions. Much by the same token, the guidelines were addressed, district court addressed the guidelines, he made sure counsel recognized the guidelines, and they had discussed those. And I would note, finally, that in one case cited by the defense, United States v. Macri, 11th Circuit, 2007 case, in that case, the 11th Circuit concluded that simply informing the defendant of the existence of the guidelines, asking him if he has discussed them with his counsel is enough to satisfy Rule 11B1M, and the district court went much farther here. And for all these reasons, this court should uphold the defendant's conviction and his sentence. If there's no further questions. Apparently not. Thank you. In addressing the Tapia error, procedural and substantive reasonableness is reviewed for abuse of discretion here. And we submitted a 28-J letter as well, with a case from last month, United States v. Gessing, where this court vacated and remanded the criminal sentences improperly based on rehabilitation under Tapia. In that case, the court said, there's a strong showing, you need to learn you can't get away with this type of conduct, you need time to sit and think about what you've done, and that you need help. And this court deemed that enough of a Tapia error for reversal. Even where the court had discussed other proper factors for the sentence, this court sent it back. And in this case, when you look at the record, the record is so long in this case, the sentencing transcript is so long because the court permitted the victim, Ronald Kruger, to testify for an hour and a half, where it cut off Mr. Kruger's witness after eight minutes. And so that's the bulk of the sentencing transcript in this case. Just before imposing sentence, after imposing the departures, the court said, I must consider deterrence, protect the public, reflect the seriousness, and improve offender conduct. Now let's start with that last one. And it focused first on improving the conduct and giving him, quote unquote, the help that he needed. And then again before imposing sentence, the court went back to that and said, this sentence is to give you a structure to confine environment, to start mental health treatment, and it's to help you. Not only to punish and protect. And then finally, after imposing sentence, the court said, this sentence was also imposed to allow you to get application into the RDAP program, into the specific treatment program. And the Supreme Court specifically prohibits, and this is a quote, a prison sentence to enable an offender to complete a treatment program or otherwise promote rehabilitation. That is what Tapia dictates. And this court, in guessing, and Sanders, Brooks, Caufelt, Senske, and a number of other Tapia cases has vacated, whereas here, the sentence was lengthened for rehabilitation purposes. And protection and deterrence are also met in other ways in this case. Again, there's a protection order in place for five years until 2019. He has three years of supervised release where he has to attend mental health counseling, possibly inpatient. And that's a considerable length of time. And if he violates supervised release, if he violates the protection order, he will face new criminal charges for that. As going briefly into the departures, I don't have much time, but there's a long history of a very volatile relationship here between Mr. Kruger and the victims, his adoptive parents, with allegations of abuse going both ways. And the issue here is not what occurred, but it's, in the past, whether that abuse occurred. It's that the departures here trivialize the worst of the worst cases where those departures truly apply. In cases such as torture or gang rape or, you know, there's a rape of a victim's wife in front of him. Those are the cases where these departures have been applied, and this case is very far from that. Where the district court found there was no intent to carry out these threats. They were shocking, yes, the voicemails, but it was done for shock value to get his adoptive parents' attention, not to actually do the things he was saying in the threats. And as for the Rule 11 errors, it's our argument that Rule 11 must have some type of teeth. There must be some enforcement of Rule 11 if courts are going to continue to comply with that. And that's the embodiment of the Due Process Clause, that pleas be knowing, intelligent, and voluntary. And if Rule 11 isn't completely complied with, why do we have Rule 11 if it's not going to be enforced? What are you suggesting, in light of what did happen at sentencing, or at the plea hearing, what are you suggesting that the court should have done to make sure that he understood and that there was a factual basis for this plea? Specifically, the right to depart or vary upward by the court, and explaining that in a way a layperson could understand, which the court did not explain here. It briefly and vaguely referenced a sentence you might not like, or a sentence above the range, but it didn't go into specifically how it could do that in this case. So that's what we would ask for. And I notice I have just a few more minutes. I'd just like to point out to the court that Mr. Kruger's sentence, he'll be eligible for his sentence is up in July, and had he been sentenced within the 12 to 18-month range, he would already have completed his term of incarceration. He's going to be up in July? He'll be up for halfway house in January. And then his release in January, and his actual release date, I believe, is July, next July. Okay. Well, thank you, counsel, for your arguments today. We do appreciate them. The case will be submitted. You may call the next case.